**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WILLIAM SHARP,

                Plaintiff,

v.                                 CIVIL ACTION NO.   2:20-cv-00774

ARAMARK FOOD SERVICES
CORPORATION and KATHY HUBB,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Amended Complaint* (Document 23), *Defendant Norma C. Hebb's Motion to Dismiss* (Document 11), *Memorandum in Support of Defendant Norma C. Hebb's Motion to Dismiss* (Document 12), *Supplement to Defendant Norma C. Hebb's Motion to Dismiss* (Document 16), *Plaintiff William Sharp's Response to Defendant Norma C. Hebb's Motion to Dismiss* (Document 18), *Memorandum in Reply to Plaintiff's Response to Defendant Norma C. Hebb's Motion to Dismiss* (Document 21), and all attendant documentation.   For the reasons stated herein, the Court finds that the motion to dismiss should be granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff originally filed his complaint in the Circuit Court of Kanawha County, West Virginia, on September 4, 2020.   The matter was removed to this Court on November 25, 2020. The Plaintiff filed an amended complaint, correcting a misnomer and supplementing factual material, on February 11, 2021.   The amended complaint alleges that the Defendants failed to

provide the Plaintiff with protective gloves, which resulted in serious chemical burns on the Plaintiff's hands from contact with dishwasher detergent.

In particular, the Plaintiff asserts that while he was an inmate at the Denmar Correctional Center in Pocahontas County, West Virginia, he worked under the authority and supervision of Defendant Hebb. Defendant Hebb was an agent and employee of Defendant Aramark who provided kitchen services. In the fall of 2019, the Plaintiff complained to Defendant Hebb that he required protective gloves to safely place detergent into the dishwasher. The Plaintiff made numerous complaints, and Defendant Hebb agreed gloves were necessary.

Although the Defendants were informed of the need to provide protective gloves, the Defendants failed to do so. Thus, the Plaintiff argues that the Defendants failed to provide the protective gear that could have prevented the Plaintiff's injuries. The Plaintiff further argues that, as a result of the Defendants' conduct, he "suffered serious chemical burns from which he still suffers today" and have also caused "severe emotional and mental distress as well as severe pain and suffering." (Amend. Compl. at ¶¶ 9-10.)

Based on these allegations, the Plaintiff asserts claims for negligent/reckless conduct, vicarious liability, premises liability, negligent/reckless/wanton conduct and deliberate indifference in violation of the Eighth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983. The Plaintiff requests damages for pain and suffering, medical expenses, emotional and mental distress, disfigurement, punitive damages, court costs, pre-judgment and post-judgment interest and attorney's fees and expenses.

Defendant Hebb filed her motion to dismiss on January 12, 2021.  The Plaintiff filed a response on January 26, 2021.  The Defendant filed a reply on February 2, 2021.  The matter is ripe for review.

STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements."  *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  *Edwards v. City of Goldsboro*, 178 F.3d 231,

3

244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

### A.  *Section 1983 Claim*

Under Section 1983, a plaintiff may sue an official acting "under color of" state law for an alleged deprivation of a federal constitutional right. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018).   The Eighth Amendment "protects inmates from inhumane treatment and

4

conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment also imposes duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and reasonably guarantees the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish a violation of the Eighth Amendment in the context of conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard by showing that the conditions of confinement have imposed a "serious or significant physical or emotional injury," and (2) that prison official acted with "deliberate indifference" to the inmate's health and safety under a subjective standard by knowing and disregarding an excessive risk to the health and safety of the inmate. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *Odom v. South Caroline Dept. of Corrections*, 349 F.3d 765, 779 (4th Cir. 2003); *Farmer*, 511 U.S. at 837 (1979).

i.    *Sufficiently Serious Deprivation*

Whether a deprivation of rights qualifies as a serious or significant physical or emotional injury is an "objective inquiry" that "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). The Plaintiff asserts that he "suffered serious chemical burns from which he still suffers today" and which have caused "severe emotional and mental distress as well as severe pain and suffering." (Amend. Compl. at ¶¶ 9-10.)

A review of the case law regarding what constitutes a serious or significant physical or emotion injury reveals that serious chemical burns from which the Plaintiff has suffered for over a year fall somewhere in the middle of the spectrum. *Nelson*, 677 Fed.Appx. at 826 (finding that

a facial fracture constituted a serious or significant physical injury); *Parker v. Stevenson*, 625 Fed.Appx. 196, 200 (4th Cir. 2015) (finding that diffuse edema, which resulted from failure to provide the inmate a mattress, did not constitute a serious or significant physical injury where it was treated with Tylenol and Lassix and resolved within eleven days of the inmate reporting it to staff); *Rish v. Johnson*, 131 F.3d 1092 (4th Cir. 1997) (finding that failure to provide appropriate protective equipment and clothing to safeguard inmates from the risk of contracting infectious diseases during the performance of their duties in cleaning blood and other body fluids could qualify as grounds for serious or significant physical injury).

The Plaintiff's alleged facts are most analogous to the *Rish* case, in which the plaintiffs were denied protective equipment, exposing them to risk of contracting infectious disease.   Given the Fourth Circuit's prior determination that failure to provide such protective equipment may qualify as grounds for serious or significant physical injury, the Court finds that the Plaintiff has alleged a sufficiently serious deprivation to survive the motion to dismiss.

ii.     *Deliberate Indifference*

In order to establish deliberate indifference, "the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." *Williamson*, 912 F.3d at 171 (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (brackets omitted). "Importantly, mere knowledge of such a deprivation does not suffice." *Id.*  Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995)).   "A prison official is deliberately indifferent to a substantial risk of harm to a prisoner when that official knows of and

6

disregards the risk." *Nelson v. Henthorn*, 667 Fed.Appx. 823, 826 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)) (internal quotation marks and brackets omitted).   The Fourth Circuit has stated,

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious.

*Id.* (quoting *Farmer*, 511 U.S. at 842).

In this case, the Plaintiff has asserted that he repeatedly informed Defendant Hebb of the need for gloves, that she was required by her position to provides gloves for the benefit of the Plaintiff, and that she refused to do so despite being put on notice.   Whether the Defendant had sufficient knowledge is a question of fact.   The Plaintiff has alleged that Defendant Hebb knew of, and yet, disregarded the risk posed by failing to provide protective gloves.   Therefore, accepting the Plaintiff's allegations to be true, the Court finds that the motion to dismiss should be denied with respect to the § 1983 claim.

*B.  Negligence*

The Plaintiff has also asserted claims against the Defendant Hebb for negligent/reckless conduct.   In particular, the Plaintiff asserts that the Defendant failed to ensure the kitchen was safe to work in, failed to provide the Plaintiff the proper protective clothing, allowed the Plaintiff to work under conditions she knew were hazardous and failed to properly supervise routine cleaning, housekeeping, and sanitation of the food preparation service.   Defendant Hebb asserts that the Plaintiff has failed to identify a duty she owed to the Plaintiff and, therefore, the Plaintiff's claim for negligence must be dismissed.

To establish a claim for negligence, a plaintiff "must prove that the defendant owed the plaintiff some duty of care; that by some act or omission the defendant breached that duty; and that the act or omission proximately caused some injury to the plaintiff that is compensable by damages." *Hersh v. E-T Enterprises, Ltd. P'ship*, 752 S.E.2d 336, 341 (W. Va. 2013). The West Virginia Supreme Court has developed a test for determining whether a duty existed:

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Id.* at Syl. pt. 3 (quoting Syl. pt. 3, *Sewell v. Gregory*, 371 S.E.2d 82 (1988)). "[T]he existence of a duty also involves policy considerations underlying the core issue of the scope of the legal system's protection." *Aikens v. Debow*, 541 S.E.2d 576, 581 (W. Va. 2000) (quoting *Robertson v. LeMaster*, 301 S.E.2d 563, 586 (W. Va. 1983)). "Such considerations include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Id.* Whether a defendant owes a duty to the plaintiff is a question of law for the court to decide. *Id.* at Syl. pt. 5.

In the instant case, the respective duties of Defendant Aramark and the WVDOC are set forth in the RFQ. The RFQ provides that the Defendant will provide "management of the daily food service operation; . . . sanitation of food service area to include the main dining area; establishing food and supply needs; [and] training of food service staff and inmates assigned to kitchen and dining room areas . . . ." (Document 11-3 at 000019.) Moreover, the RFQ provides that the Defendant "will be required to provide operational management; to include staff, and all necessary supplies." (Document 11-3 at 000019.) The RFQ provides that "The facility will have

the final authority regarding inmate workers and will be responsible for inmate wages, uniform, and any training required by the State Health Department to work as a food handler.   The Vendor shall be responsible for training the inmate workers to their assigned task(s) and ensuring all safety standards are met."   (Document 11-3 at 000023.)

The RFQ further provides that the Defendant Aramark is responsible for "the cost and expenses of . . . [a]ll paper, Styrofoam, plastic, gloves, aluminum foils, and any other disposable products used in food service operation."   (Document 11-3 at 000027.)   The RFQ states,

> Vendor shall be responsible for the supervision of routine cleaning, housekeeping, and sanitation in the food preparation service and storage areas.   Vendor shall insure that high standards of sanitation are maintained and will be responsible for the supervision of trash and garbage removal from the dining and kitchen areas to designated site locations.   Agency facilities herein listed will supply all necessary cleaning and sanitation supplies for the food service operation.

(Document 11-3 at 000023.)   The Inmate Work Agreement signed by the Plaintiff states, "I will approach my job/class safely, use proper equipment and practice good housekeeping." (Document 16-1.)

The amended complaint alleges that the "Plaintiff worked under the authority and supervision of Defendant Hebb and Aramark who acted, at all times pertinent hereto, as an agent and employee of defendant Aramark who provided kitchen services."   (Amend. Compl. ¶ 6.) The amended complaint further alleges,

> In the fall of 2019, plaintiff and others complained to Defendant Hebb that plaintiff required protective gloves to safely place detergent into the dishwasher.   Plaintiff complained numerous times and Hebb agreed that the gloves were necessary.   Despite said knowledge of the unsafe condition, defendant Hebb did not provide plaintiff the gloves he requested.   This denial resulted in plaintiff being forced to work in the unsafe conditions.   Moreover,

9

the RFQ required that Aramark provide gloves to individuals working in the kitchen.   The failure of defendants to carry out their duties as supervisors and as set forth herein proximately caused or contributed to plaintiff's severe burns and scarring.

(Amend. Compl. ¶ 7.)

As it relates to the provision of gloves, under the facts alleged here, the Court finds that the terms of the RFQ are ambiguous.   The RFQ clearly indicates that the Defendant Aramark is responsible for the cost and expense of gloves.   It also clearly requires the DOC to supply all necessary cleaning and sanitation supplies for food service operation.   Importantly, however, it further states that the Defendant Aramark "has the responsibility of routine cleaning . . . in the food preparation service . . ."   (Document 11-3 at 000023.)

Defendant Hebb argues that she had no duty to provide gloves to inmates.   However, the Court finds that the duty to supervise all routine cleaning and sanitation in food preparation could reasonably include a duty to provide gloves to an inmate, who complains of chemical irritants while cleaning, in food preparation and subject to the Defendant's supervision.   Equally, the DOC's duty to supply all necessary cleaning and sanitation supplies for food service could reasonably include gloves.   Having found an ambiguity in the language of the RFQ, as it relates to the duty to provide gloves, the Court finds it appropriate to consider evidence outside the four walls of the RFQ, including the parties' actual practice.   *Equinor USA Onshore Properties Inc. v. Pine Res., LLC*, 917 F.3d 807, 813 (4th Cir. 2019) (noting that, under West Virginia law, extrinsic evidence may be considered to aid in the construction of contract where contract language is ambiguous).

Therefore, the Court finds discovery related to the provision of gloves, under the facts presented here, would be helpful to the determination of the existence of duty.   Since discovery

10

is necessary, the matter is more appropriately resolved at the summary judgment stage of litigation. Accordingly, the Defendant's motion to dismiss the claim of negligence/reckless conduct and vicarious liability should be held in abeyance pending discovery.

    *C. Premises Liability*

    The Plaintiff also asserts that Defendant Hebb had authority and control over the kitchen and was responsible for maintaining premises that were safe and free of hazards.   The Plaintiff asserts that the Defendant, however, knowingly, negligently, recklessly and/or wantonly failed to follow protection policies and procedures and exposed the Plaintiff to dangerous premises that ultimately and proximately caused the Plaintiff's injury.   The Defendant argues that the Plaintiff failed to allege any facts that pertain to the premises which would allow for a claim of premises liability to proceed and also argues that the danger posed by the dishwashing detergent was open and obvious.

    The West Virginia Supreme Court has held that,

> In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

*Mallet v. Pickens*, 522 S.E.2d 436, 447 (W. Va. 1999).   Foreseeability is a dispositive element in premise liability cases because "before an owner or occupier may be held liable for negligence, he must have had actual or constructive knowledge of the defective condition which caused the injury."   *Neely v. Belk Inc.*, 668 S.E.2d 189, (W. Va. 2008) (quoting *Hawkins v. United States Sports Assoc., Inc.*, 633 S.E.2d 31, 35 (2006)) (internal quotation marks omitted).   Moreover,

11

premises liability is limited to the extent that the dangers are "open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant."   W. Va. Code § 55-7-28(a).   A plaintiff cannot recover for injuries that were sustained from open and obvious dangers because an owner, lessee, or occupant owes no duty of care to protect others from such dangers. *Id.*

As an initial matter, it is not clear that dishwasher detergent has a sufficient nexus to the premises to establish a cause of action for premises liability.   As this district has previously noted, "premises liability typically involves some form of hazard, danger or nuisance on property causing an injury."   *Porter v. W. Va. Regional Jail Corr. Facility Auth.*, No. 3:14-26583, 2015 WL 5698514, *5 (S.D. W. Va. Sept. 28, 2015) (Chambers, J) (finding that a claim for premises liability failed where "Plaintiff cites no cases, and the Court did not find any cases, to support his theory that a failure to provide medication can establish a cause of action for premises liability."). Accepting the Plaintiff's allegations to be true, this Court has found no legal precedent tending to establish that injuries sustained from dishwasher detergent can establish a cause of action for premises liability.   Accordingly, the Court finds that the claim for premises liability should be dismissed.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant Norma C. Hebb's Motion to Dismiss* (Document 11) be **GRANTED IN PART AND DENIED IN PART**, as more fully set out herein.   Specifically, the Court **ORDERS** that Count IV against the Defendant be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    February 12, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA